Court now calls case 117922 In re the Marriage of Raymond A. Eckersall III and Catherine Eckersall. Are the parties ready to proceed? May it please the court, good morning justices. My name is Ben Page and I'm arguing on behalf of Catherine Eckersall, the respondent and counter petitioner before. We've asked for this court's review of this, of the judgment for the appellate court for the first district because the practical meaning of the appellate court's opinion is that any trial judge presiding over a custody or domestic relations matter may enter any order at any time restricting a parent's rights and relationship with his or her children without any due process, without any pleading before them, without any findings of fact, without hearing any evidence, without the slightest possibility of appellate review during the course of the proceedings. In this case the facts are pretty simple. In late June 2013 the trial court entered an order stating that there would be a status conference on July 10, 2013 on Mr. Eckersall's petition to set a temporary parenting schedule and the order further noted that if there were not an agreement as to the entry of a custody slash visitation injunctive order at that time, the court would enter one. The only pleadings pending at that time, aside from the party's respective petitions for dissolution of marriage, were Mr. Eckersall's petition to set a temporary parenting schedule, Mrs. Eckersall's petition to set temporary support, and Mr. Eckersall's petition to coerce Ms. Eckersall to obtain gainful full-time employment. On that July 10, 2013 date, the court heard argument from counsel and heard Katherine's objections to the entry of the custody slash visitation injunctive order that the child's representative had prepared. It made no findings and specifically noted in the order that it was not finding that either party had engaged in any of the conduct that was restrained and enjoined under the order and further noted orally that the purpose of the order was to coerce the children into following its orders with respect to visitation. The order itself restrained the parties, it restrained and enjoined the parties, their agents, their employees, and their family members from engaging in 14 different sub-paragraphs of behavior. Examples of the activities restrained by that order include grounding the girls since interference with personal liberty was restrained and enjoined, restrained the parties from taking pictures at the children's graduations, putting their 8th grade graduation, or taking videotapes of the children's sporting activities. It restrained the parties from having any aspirin or cooking wine in the house, restrained the parties from discussing any of the children's questions they might have regarding the divorce. It restrained the parties from explaining what would be happening in the divorce, including the time that the children would spend with each of the parties going forward. It restrained the parties from telling the children that they'd ever have to come in court or if the children asked questions about what was going to happen to them after the divorce during this sensitive time, what would likely happen. Counsel, this issue is moot, is that correct? Yes, Judge. Let's say we agree that the judge was wrong, it was an error, the judge shouldn't have done this. Why should we resolve this issue? The issue is over, it's moot. We believe this is a good case for the application of the public interest exception to the mootness doctrine. Why? If this one judge entered one order that you argue was an error, what is the public interest? As my opponents here acknowledge, this type of order, almost verbatim, is entered nearly every day, particularly in the first and second appellate judicial districts. They are entered as a matter of course, they are entered often, and they are entered without reason. Oftentimes they're entered by agreement, but oftentimes they're not. How does that help your argument? I agree with you, it appears to be a commonly used form order, certainly in Cook, and there's no other case that has ever even addressed such orders, let alone called them into question and declared them unconstitutional. This is the only one of its kind. So why would that fact alone not err on the side of us dismissing this matter as a moot? Well, that fact alone, I suppose, would judge. The problem with this type of order is that it's a temporary order. It lasts until the case's final judgment is entered. Oftentimes final judgment is going to be entered before, as in this case, the appellate court can adjudicate the appeal of the order itself. I hate to give you a hard time, but why wouldn't that err on the side of this court determining and dismissing this matter as moot? You're right. They're inherently temporary, so their effect in any given case is by their very nature limited. Justice, because these orders affect the relationship between the parent and the child so much during the time the divorce is pending, there's no harder time for a child than the year or more that they have to go through this divorce process, and to not have their parents ready and available to answer their questions during that period is, in our view, just downright wrong, particularly where there's no particular reason for the order to be entered. Why we think the public interest exception here, the second prong, I think, militates heavily in favor of this court hearing the appeal, notwithstanding the mootness, in that I think the public, the judicial officers throughout the state ought to have some guidance as to the determination of how they're supposed to and when they're supposed to enter these orders, if ever. Certainly we acknowledge that there are times when it is readily appropriate for a court to restrain a parent's behavior as they go through a divorce. Parents going through divorces are absolutely not acting at their best with respect to their children or most other things. Parents going through divorces can do better. Parents generally can do better, but certainly going through a divorce are not at their best. So the argument is not that this should never happen. It's just when it should happen, and that's why we think that it's important that trial judges presiding over custody matters have some guidance as to when it is appropriate. Of course, there is a second threshold question here, and that's the appellate court for the second, excuse me, the first district appellate court's decision that this was not an injunction, the custody solicitation injunctive order in the 14 paragraphs that it entails. Counsel, does the court have should the court, must the court wait until the children are harmed before they enter any kind of a restrictive order? Not until they're harmed, Justice, but until there's some threat of harm or some other type of activity that might harm their welfare, safety, or well-being generally. It doesn't have to be that the court waits until the children are, for example, hit or struck if they find that one of the parents is being inebriated around the children. There's certainly some precursors, but there has to be some evidence or some factual predicate before the court enters an order that restrains the parent-child relationship. And that's just simply because the parents have that right under the Due Process Clause of both the Illinois and the federal constitutions to parent their children. How does that intersect with the court's obligation to protect the best interests of the children? It intersects in that the court absolutely has the obligation to protect the children. However, it has to do so in a way that does not violate the parents' constitutional rights. It's certainly, it's not as easy for the courts to administratively do both, but I think they have to. They have to have some kind of short hearing of evidence. They have to have some sort of pleading before them, and they have to make some sort of finding and tailoring of whatever order they're going to enter to the facts of the case. Simply stamping an order like this in every case where there's any concern or there's any custody dispute whatsoever is inappropriate because the parents have that right in this order in the absence of making that finding that the health, safety, or welfare of the children is in jeopardy in some way, shape, or form violates that right. As to the appellate court for the first district's finding that this order was not an injunction, it rested on a few different issues, one of which was that the order itself was ministerial, which we think is clearly an error, in that a ministerial order is one that simply regulates the pretrial proceedings before the trial court and is by definition one that does not affect the relationship between the parties outside the litigation. Here the order clearly affects the relationship of the parties and their children outside the litigation in 14 plus different respects. So we do not believe it's a ministerial order. We also believe that the appellate court for the first district's policy of not finding this order to be an injunction violates the general policy of construing the term injunction for the purposes of Rule 307 A1 broadly. Here the appellate court construed it that the term varied narrowly. It found that because the order itself was fashioning in terms of visitation, it couldn't be an injunction because the trial court didn't present the indicia of an injunction, that it didn't make the appropriate findings for an injunction, that it couldn't be an injunction, which the standard itself for whether or not an order is an injunction, whether or not it's in substance an injunction is an objective standard and not one that the appellate court found to matter. The issue, perhaps the hardest issue here in the injunction side of this case is where to draw the line and where a visitation order, whether or not a visitation order itself is an injunction and the proverbial sea of flood of cases that that might entail. Here, and I think in Remarriage of Johnson, a first district case is one that the court ought to rely on, where the court found that where a court is simply declaring the party's rights and obligations, statutory obligations that that ought not to be an injunction even if it's coercive in effect. Where a court is making a decision as to a temporary visitation order, for example, or a temporary custody order or temporary child support that ought not to be an injunction since the court is simply granting a statutory right and is declaring the party's rights and obligations under that statute. In a case like this where the court is essentially protecting the children but the order itself is an equitable one where there's no statute specifically authorizing it other than the 501A3 of the Illinois Marriage and Dissolution of Marriage Act the other appropriate temporary relief, I think it has to be construed an injunction. If we reach the issue of injunction and if we agree with you, would that mean that any temporary custody or visitation order would be immediately appealable if it had any restrictions or conditions? No, I don't believe so. I mean, technically a temporary custody order is appealable by permission under Rule 306A5 anyway. But no, I do not believe a temporary visitation order is since that is simply declaring the rights of the parties to the visitation with their children which is in form, perhaps coercive, but I don't think in substance since it's really just declaring what the party's rights are. Even if it includes restrictions or conditions such as this order did? No, that I would disagree with. If the order itself contains additional, as this one did, saying the parties shall visit with Timmy and Susie every other weekend, but also that they shall not discuss any aspect of the divorce with the children, I think at least that second aspect of the order would be appealable. The first would not. So is there any restriction that the trial court could place on appearance in a visitation order revolving around their conduct that wouldn't be an injunction? That's a good question, Justice. I mean, certainly the part of the order that would be ordering the parties to pick up and drop off the children I don't believe would be an injunction because again, in substance, I think it's just a declaration of the party's rights and obligations with respect to their children. What about an order that said you're not to disparage the other party in the presence of the children? I do believe that's an injunction, Your Honor, because it does compel the parties, the people to which it's directed, to refrain from doing a particular thing. Not to say that that's a bad thing in many cases, but usually there's got to be some predicate for the entry of that order. There has to be some reason for the entry of the order, either that the parents have some suspicion at least that the other parent is disparaging them. In practice, I think it's going to continue to happen quite often that that kind of order is entered by agreement of the parties because usually they agree that it's a good thing not to disparage one another around the children. In practice, it happens in virtually all cases, at least where it's not real clear between the parties that they don't have that issue before them. By agreement in virtually every custody judgment that's entered, that kind of language is there. The only issue here is whether or not you can appeal it as an interlocutory matter where the order is entered over your objection. I don't think it's going to be all that often that it happens given that it's agreed to most of the time. We take more issue with some of the other terms of the order such as the prohibition on videotaping the children or answering the children's age-appropriate questions regarding the divorce. It's a fine line, but certainly disparagement is not something that anyone would say is appropriate around children.  Did you report that there were any of the terms or conditions that were, in Katherine's eyes, inappropriate? Yes, Justice. When the issue was before the court on July 10, 2013, the parties each provided a version of the order that they felt would be appropriate and agreeable. Katherine's differing in some respects. Primarily, it's not in the record, but I suppose I can answer it to some degree. The issue being that she didn't want to not be able to answer her children's questions about where they would be in the divorce. She objected to have every one of these prohibitions in there, but it wasn't that none of them were by agreement or would not have been by agreement. So is that in the record? No, it's not in the record, Justice, other than the fact that each of the parties handed up an order when they stepped up. And the court determined to enter the child's representative's order with one modification requested by Mr. Eggersall. The order, and I should note, the order itself, in paragraph 3 I believe it is, stated that each of the parties would be able to seek a full evidentiary hearing on the order at their request. It noted, and I believe it was Mr. Rosenberg's brief, that that provides enough due process because she could have sought a review of the order under that provision. We don't believe that that's sufficient due process for several reasons. First of all, there's no reason in the world it should be Mrs. Eggersall's or Mr. Eggersall's burden to disprove what's never been pled or proven against them in any way, shape, or form. Secondly, we think the court ought to have that factual predicate before it enters the order. Second, that the standard proof during any such hearing, I have no idea what it would be. It's awfully hard at a hearing when you have no pleading before you, and to have a rehearing on a hearing that there's no pleading in the first place is awfully difficult, but would it be her burden to disprove every one of the restraints provided under that custody solicitation injunctive order? It's unclear. Third, because as a practical matter, no one is going to get a full hearing on an order for which there was no pleading predicating it. And fourth, there's no authority for the proposition that providing the due process after the fact is adequate. If there are no further questions, Justice Eggersall. Thank you. Ma'am? Madam Chief Justice, distinguished members of the Supreme Court, I want to thank you very much. I wish you good morning for taking the time to allow me to argue this morning on behalf of these children. My name is Howard Rosenberg. I'm the children's representative in this case. I represented the Eggersall children. My practice is limited to representing children. I have perhaps 200 kids at any time that I represent. I don't believe, and I haven't heard this morning from Mr. Page, I don't believe that anybody has argued that the order entered by Judge Boyd on July 10, 2013 is not in the children's best interest. The argument is procedural, it's statutory in nature. I think it's critical to consider the real injury which will occur to thousands of children in this state every day if the ruling of the learned Judge William S. Boyd and the affirmation of the decision by Justice Michael Hyman is overturned. We deal with the most important issues every day concerning our state's children. This order is an attempt by an experienced judge to protect my clients from the acrimony of their parents' divorce. The threshold issue I'm going to try to address, I'm splitting my time with Ms. Rizzo, representing Ms. Eggersall, I'm going to try to focus on the injunction issue. The threshold issue is, was the order an injunction, and if it was not, it's not appealable under 307A1. I want to start with the Supreme Court case 1989, in re, a minor, which stated, not every non-final order of a court is appealable, even if it compels a party to do or not to do a particular thing. So you ask, where is the support, the argument that this particular case is not an injunction? To start with, virtually all cases other than those under the Illinois Marriage and Dissolution of Marriage Act are filed to remedy a wrong, to restore or to preserve the status quo. The nature of commercial injunctions, that is the nature of a commercial injunction. Under the IMDMA, that's not the case. The IMDMA particularly, as it relates to children, parents and children, it's not concerned with misconduct. 503, there's an award of property without regard to misconduct. 504, we award maintenance without regard to misconduct. And of course, 602, the provisions for custody and 607 visitation, always, not misconduct, only the best interest of the children is the concern. In re, the Marriage of Davis, 2003 case stated, quote, the overarching purpose of the IMDMA is to promote the best interest of the children. Therefore, I think you have to consider that as a result of the competing objectives of divorce proceedings, as compared to other compensatory actions, the law of commercial injunctions never was and should not be intended to apply to the IMDMA, particularly orders affecting the care and custody of children. The legal basis, the commercial injunction statutes, the Code of Civil Procedure 11-101, you find, if you compare the commercial injunction statute with the injunction language in the IMDMA under 501B, then you also find it under 701. 701 is exclusive possession of a residence, a property. They put in, the legislature put in injunction language there. 501B, they put in injunction language. It's fundamental, statutory construction, a statute must be construed to give meaning to all provisions. If the Code of Civil Procedure, the 11-101, the commercial language, applied to the IMDMA, the legislature would not have put into the IMDMA injunctive language. I would respectfully suggest that under 501A3 the other appropriate temporary relief has been referred to as an all-inclusive provision. I think that the type of order entered by Judge Boyd in this case clearly was appropriate and he had the ability to enter such an order under 501A3. Also, a second reason, the traditional injunction statute in commercial cases, what do we always see? It's an extraordinary remedy. All the cases say that. It's an extraordinary remedy. If you look at the language in this order, it's anything but extraordinary. It's the most common type of relief granted. It's an indisputable fact. And the relief was strictly related to the care and custody of children. And I keep coming back to that term. And when we get to 306, you'll see why. What type of relief was granted? And Mr. Page correctly pointed out, visitation. On its face, visitation is injunction, isn't it? But nobody would be silly enough to suggest that you have to approve up an injunction for visitation. In my cases, parents are at their worst in divorce. One of the most common things that I try to put in place when one parent picks up the kids, dad or mom, whoever it is, stay in the car. Let the other parents stay in the house. Kids come into my office, they hate when the parents argue. Simple relief. Stay in the house, stay in the car. We call it curbside pickup. Under the argument before you, it's an injunction. Can you imagine? Telephone calls. They never answer the phone when I call. Simple. I put in the order. People don't argue, but some people will. I want the phone to ring at 7 o'clock. Whoever has the kids has the phone at 7 o'clock. So simple. You're compelling them to call at 7 o'clock. It's an injunction? Really? Who can be on the phone? Don't listen on the phone. Who can be present? Don't treat when you're with the kids. I have so many examples. I can go on and on. In the Eckersall case, interestingly, Mr. Eckersall did not want to take the kids to church on Sunday morning. The kids were active during his visits. Mrs. Eckersall came in before Judge Boyd and said, I want the kids to go to church on Sunday morning. Mr. Eckersall says, nobody can tell me what to do on my time. We researched it. There was a lot of discussion. Cases were there. Judge Boyd correctly ordered Mr. Eckersall to take the kids to church on Sunday morning, and if he didn't want to go to church, due to the nature of the division of church and state, he said drop them off at 9, pick them up at 11. Mrs. Eckersall will take them. The same concept, take the kids to the soccer game on your time. Take them to practice on Tuesday night. If you don't practice, you can't play on the weekend. Is this all injunction? The order entered by Judge Boyd was not final. If there was any inequity in the order, it could have been corrected before the final order was entered. It was entered without prejudice. It was subject to a hearing. And key, it was pre-decree. I urge the court to carefully review the brief from the American Academy, Mr. Feinstein and Mr. DiDomenico, great lawyers. They're neutral. They certainly have no horse in this race. At page 2 of their brief, they came right out and they said, and they're correct, they advised the court, these orders were entered every single day in every divorce case involving children. And they are, for good reason. This order was not intended as an injunction. I read these cases, they talk about form or substance. The fact that it's labeled a custody visitation injunctive order. I've been practicing for 32 years. This order was originally from Judge Bellows, who's been sitting in the court forever. I shouldn't say forever, a few years. Judge Bellows, this order, I've seen it for somebody had to retype it because it was copied the wrong way. The order is entered because what Justice Hyman referred to as the rules of the road. That's what he referred to it as. He's very insightful. And I don't want to take the time, at the end of Justice Hyman's decision, in the appellate court, he basically said act before there's damage. Why wait for the damage to be done? He had four or five sentences which were wonderful sentences. Back to some cases. Mr. Page cited seven cases for the proposition that this case is an injunction. If you go through his cases, three of the seven were cases under 701, exclusive possession. And those are certainly 307 cases. 701 of the Marriage and Dissolution of Marriage Act has specific injunctive language. Two of the one was Tetzlaff where they talked about some money that was to be held in an escrow account. Another was Meyer, a 20-year-old case that said when you sell a house during a divorce, the court has the authority to allow you to roll the money over into another house. They let Mrs. Meyer use the proceeds for another home. Not an injunction. Even if the court determines that this is not an injunction, it's very important to note, and I know you know, that there is an avenue for review. And that's 306A5. 306A5 provides for appeal by permission from interlocutory orders affecting the care and custody of unemancipated minors if the appeal of such orders is not otherwise provided. Why is 306 in the rules? 306 is in the rules to allow for review of cases exactly like this. For rulings just like this. Mrs. Eckersall complains that she was deprived of her rights. And of course, you know, we have to balance the rights. There's three sides to this claim. There's the mother, there's the father, and there's the children. So sometimes people are deprived of their rights because we balance those constitutional rights. The children have rights. The children have the right that when somebody gets served with a petition for dissolution of marriage, as happened in this case, that that petition isn't then shown to the children. The children have the right. I can't tell you how many cases kids say, well, mom told us that dad left us. No. Dad didn't leave us. Dad left your mom. At the end of the case, you're going to have a mother. And you're going to have a father. So, I think that it's key and I think you need to do the right thing. If you tie the trial judge's hands, can you imagine having to file and prove up and have a hearing on a petition for injunctive relief for every little thing in this order? If you find, this kind of goes along with the amicus brief, that there was something in the order which overstepped the bounds. If you determine that certain provisions are acceptable as ministerial or conditions on visitation, which really is what it was, but you think something went too far, don't label this type of order  I have to give the rest of the time to my counsel, my co-counsel, Ms. Rizzo. Thank you very much. Good morning. May it please the court. Madam Chief Justice, my name is Tracy Rizzo and I represent Raymond Eckersall. I would like to get back to the issue raised earlier about this appeal being moot. This appeal is in fact moot. The timeline of this case is as follows. The order at issue was entered on July 10, 2013. The appellate court issued its ruling on May 28, 2014. And then on June 9, 2014, the final judgment for dissolution of marriage was entered in this manner. It wasn't until after the judgment was entered in this case that the appellant filed her petition for PLA on July 2, 2014, and that petition was granted on July 24, 2014. The July 10, 2013 court order was a temporary order. Therefore, it is no longer in effect because the final judgment was entered in this case. When a divorce action becomes final, the temporary order has fulfilled its purpose and is superseded by the final decree. In addition, pursuant to Section 501 D3 of the IMDMA, the temporary order terminates when the final judgment is entered. Therefore, the order in question is no longer in effect. It has been merged into the judgment for dissolution of marriage, rendering this appeal moot. There is no actual controversy existing between these parties. This court has held that an appeal is moot when it involves no actual controversy or when the reviewing court cannot grant the complaining party effectual relief, which is what we have here. This court has also held that it will not review cases merely to establish precedent. Counsel for Mrs. Eckersall has argued that the public interest exception should apply here and that the court should still hear this case despite the fact that it is moot. However, the public interest exception does not apply in this case. In order for the exception to apply, there are three strict factors that must be present in order for the exception to apply. The first factor is that the question presented must be of a substantial public nature. In May 2014, this court ruled in the case of N. Ray the marriage of Donald B. and Roberta B., and this court held that the public interest exception did not apply in that case. With respect to the first factor of the exception, this court found that persons affected by Section 607E which was at issue in that case, was a limited group of people. Despite the fact that this order has been used in Cook County for many years, there is still a limited group of people affected by this order. These orders are not entered in every case. As counsel has suggested, they are entered in custody cases in Cook County where the court believes that the parties are acting in a manner that's detrimental to their children, and they feel that they need to place conditions on the parties during their own time with the children. Because it's a limited group of people affected, it's Cook County primarily where this order is entered, and it's in cases that are really bad custody cases where the children are being affected. It's a limited group of people, and therefore the first factor to the exception has not been met. The second and third factors of the exception can be taken together, I believe. The second factor is there's a need for authoritative determination for future guidance of public officers, and the third factor is there's a likelihood of future recurrence of the question. The July 10, 2013 court order was a temporary order, which, as we have discussed, has been a form order that has been used for many years in Cook County in the Domestic Relations Division. It's a temporary Band-Aid used to protect the children during the litigation. And despite the fact that this order has been used for many years in the Division, it appears that this is the first time that such an order has been brought before the recurring court. Your Honors have found in the case of that the statute being questioned in that case, Section 607E, was in effect for 20 years, yet you noted that there was no reported decisions which addressed the application of the provision. The same is true here. Despite the fact that this type of order has been used for many years in the Division, it appears that this is the first time such an order has been brought before a reviewing court. There is not a need for this court to issue an advisory opinion. The public interest exception is narrowly construed and requires a clear showing of each of the three factors. The factors have not been met in this case. I also want to spend a few moments talking about what Mr. Rosenberg also addressed was the best interest of the minor children. This point, I believe, is the most important point the court needs to take into consideration. This order was clearly entered to protect the best interest of the minor children. One of the purposes of the IMDMA, as defined in Section 102, is to mitigate potential harm to the spouses and their children caused by the dissolution of marriage process. It is evident that the sole purpose of the July 10, 2013 court order was to mitigate potential harm to the children and to protect their best interests. It's the primary charge of the court is to protect the children. It's the primary charge of the child's representative. These parties chose to participate in this litigation. The children did not. The conditions, which is what they were, were placed on these parties were reasonable and they were placed there to ensure the best interest of the children. If you look at the order, as Mr. Rosenberg started pointing out, the conditions are really reasonable provisions. The parties cannot beat the children. The parties cannot drink alcohol in the presence of the children. The parties cannot allow members of the opposite sex to sleep over when the children are present. If a parent truly wants to protect their children during the litigation process, they would never dispute such an order. This order was drafted by Mr. Rosenberg. His charge is to act in the best interest of the children. The court, who appointed Mr. Rosenberg, can now be faulted for going along with Mr. Rosenberg's recommendations in protecting the best interests of the children. Thank you. Thank you. Just a few points, Justices. I believe Mr. Rosenberg said that there was no dispute here that the order in question was in the children's best interest, which is very much in dispute here. Certainly some provisions no one would have take umbrage with. Beating, striking the children, disparaging the other party, drinking alcohol around the children at least to excess. We take, Ms. Edgarsall, I should say, takes great issue, however, with the fact that for the year or so between the time this order was entered and the time that their judgment for dissolution of marriage was entered in May of 2014, she was unable to answer her children's questions age appropriate or otherwise regarding the divorce. In this case, they had highly intelligent children who had a lot of questions and a lot of concerns and were going through what was unquestionably the hardest time of their lives. And suddenly as of July 10th, without again any factual predicate whatsoever, at least any heard factual predicate, the court restrained both of the parties from being what would happen to them, their fears and concerns about the divorce, and essentially stripped the children of their security blankets in the form of their parents. So we do take issue with the suggestion that the order was entirely in the children's best interest. While the best interest of the child standard is certainly an important one, it does not mean that the constitutional rights of the parties are to be cast aside. The court's charge is dual. Certainly it is to defend the constitutional rights of the parties litigating before them. To Mr. Rosenberg's suggestion that wrongdoing should be a consideration of whether or not an order is an injunction or not, there's simply no basis. There's never been a case decided where wrongdoing was discussed or suggested that that was the basis of an injunction. The purpose of an injunction typically is to protect the parties' rights and the purpose of the case. So wrongdoing has nothing to do with it. It may be that neither of the parties are wrong, it's just that the court wants to preserve those rights until the case has been adjudicated. We're not disputing, by the way, that the court could have authority to enter an order like this under Section 501A3 of the Illinois Marriage and Dissolution of Marriage Act, provided, however, that there was some pleading before the court and the court heard some evidence from the parties or otherwise. It doesn't take much. It takes the court swearing in the parties who are typically there anyway and hearing a little bit of testimony about what their concern is and what the harm may be to the children from a person like Mr. Rosenberg. In this case, visitation was not ordered coincident with the July 10, 2013 order. In some cases this kind of order is ordered with a temporary visitation order. That was not the case here, which is only significant because the appellate court's opinion suggested that this was an order fashioning the terms of visitation, which it simply was not. It's worth noting that Mr. Rosenberg distinguished Section 701 of the Illinois Marriage and Dissolution of Marriage Act from this case and the cases we cited  in this injunction as one of the grounds of relief that can be granted, so does Section 501A. So I don't see how one is distinguishable from the other. As to Rule 306A5, Rule 306A5 allows permissive appeals solely from cases where there's an order, an interlocutory order, providing for the care and custody of the children. In a case like this where the custody of the children was not decided in any way, shape, or form, there's no way that we could have appealed. We would have had to file a petition for leave to appeal anyway, now that that's something we couldn't have done, provided that there was also a temporary custody order entered on July 10, 2013, which there was not. As to the mootness argument, the Donald B. and Roberta B. case cited by Ms. Rizzo is, in my mind, clearly distinguishable from this case. Section 607E deals solely with the small class of people in Illinois who are both sex offenders, registered sex offenders, and have children and are seeking visitation rights with their children. This Court, in that case, found that it was rather unlikely this situation would come up again, and therefore declined to adhere it under the third prong of the public interest exception of the mootness doctrine. In this case, the order in question applies, or at least potentially applies, to every parent undergoing a custody or divorce proceeding in the state of Illinois, and that's a much broader class. It's also worth noting this is not the first time that this type of order has ever been appealed. In Felczak v. Hruby, H-R-U-B-Y, a Second District case, the Second District Appellate Court did adjudicate and find that such an order was inappropriate, but that opinion was later vacated. I can't remember the grounds as I sit here. If there's no further questions, Justices. Don't appear to have any more questions. Thank you. Case number 117922, Henry the Marriage of Raymond A. Eckersall III and Catherine Eckersall, is taken under advisement as agenda number 17. Mr. Page and Mr. Rosenberg, Ms. Rizzo, thank you for your arguments today. You're excused at this time, and Mr. Marshall, the Supreme Court stands adjourned until further order.